FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 JAN 11  AM 11: 14

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELITA B. MARTIN | CIVIL ACTION |
| VERSUS | NO:  00-0045 |
| COPELAND'S OF NEW ORLEANS, INC. | SECTION: "S" (4) |

### REPORT AND RECOMMENDATION

The plaintiff, Shelita B. Martin, filed this action against the defendant Copeland's of New Orleans, Inc. ("Copeland's) alleging employment discrimination. This matter was referred to the undersigned Magistrate Judge for all proceedings and entry of judgment in accordance with 42 U.S.C. § 2000(e) and Rule 53 of the Federal Rules of Civil Procedure.

The defendant, Copeland's, has filed a **Motion for Summary Judgment (doc. # 47)**. The plaintiff opposes the motion.

### I.   FACTUAL BACKGROUND

On June 16, 1998, the plaintiff, Shelita B. Martin was hired by Copeland's as an expeditor.[1] On July 1, 1998, her employment with Copeland's was terminated. In its termination notice, Copeland's indicated that Martin was terminated for the following reasons: "unable to perform duties, lack of comprehension of recipes and specifications, was told several times by a

---

[1] An expeditor garnishes dishes, sets up orders on food trays, and performs quality checks on food itmes before they leave the kitchen.

DATE OF ENTRY
JAN 1 1 2002

DATE OF MAILING    JAN 1 1 2002

Fee_____
_Process_
X Dktd
_CtRmDep_
Doc.No._

manager that she was garnishing food wrong and she continued to garnish it wrong." (Def's M. Sum. J., Exhibit "1")

On November 24, 1998, Martin filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that Copeland's became of aware of the fact that she had contracted acquired immune deficiency syndrome ("AIDS") and discharged her in violation of the Americans With Disabilities Act ("ADA"). In her affidavit given to the EEOC in connection with her charge, Martin stated as follows:

> I began employment with Copeland's of New Orleans in June 1998.....Theresa was the assistant and Peter was her supervisor.....on or around June 23, 1998, I reported to work as scheduled and Theresa pulled me to the side and said "we discussed the matter and feel the position we hired you for you can't do it. So we must depart now." Theresa just walked away from me. About a week later, an employee handed me my check through the door.
>
> I believe that I was discharged because of my disability, Acquired Immune Deficiency Syndrome.....I was diagnosed with AIDS about a year ago. I did not report my disability to anyone at Copeland's. However, I believe my landlord called Copeland's and told someone. He was angry because I would not go to a former employer of his to help him get his old job back. No one at work mentioned my disability nor did my landlord ever tell me that he reported me to my employer. However, shortly after I was discharged, my landlord sent me a sympathy card saying you have my deepest sympathy but may this be a lesson well learned. I believe he was referring to my losing my job. My landlord and boyfriend were the only persons who knew about me having a job. Also, when Theresa fired me, she could hardly look at me.....

(Def's M. Sum. J., Exhibit "B")

In her opposition to Copeland's instant Motion for Summary Judgment, Martin has alleged additional facts that were not provided in her affidavit to the EEOC. Martin claims that she failed to mention these facts due to the emotional, mental and physical conditions from which she suffers as a result of having AIDS. Martin, in her opposition, claims that a couple of days after she was

hired, she was approached by a manager "Ron", who explained that he was sending her home to study Copeland's manual because she was garnishing food items incorrectly. Martin claims that because she felt comfortable with this manager, she informed him that she had AIDS and told him the manner in which the disease affects her short term memory.

Martin further claims in her opposition that about seven days after she was hired, she was terminated. She alleges that Theresa told her that "the position we hired you for, you can't do it. So we must depart now." She claims she attempted to ask Theresa whether she was being terminated, but Theresa refused to respond and just walked away. Martin received a Notice of Right to Sue from the EEOC on November 2, 1999, and filed suit in this Court on January 11, 2000.

During the course of the EEOC's investigation of the incident, Copeland's was advised that in its employment applications, it had been using a medical history form which improperly solicits medical information. Copeland's subsequently discontinued the use of the form.

Copeland's has filed the instant Motion for Summary Judgment contending that there is no genuine issue of material fact. They deny all of Martin's claims and state that no one at Copeland's was aware of Martin's medical condition nor was anyone at Copeland's contacted by Martin's landlord or any other person regarding her medical status. Copeland's further contends that Martin has no cause of action for an allegedly improper medical history form. Martin opposes the motion contending that Copeland's was aware of her condition. She claims that because Copeland's was aware of her medical status, there exists a genuine issue of material fact.

## II. <u>SUMMARY JUDGMENT</u>

Summary Judgment is proper if the evidence shows the existence of no genuine issue of

material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party is entitled to Summary Judgment only if the pleadings, depositions, answers to interrogatories, admissions and affidavits before the court at the time of Summary Judgment show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that Summary Judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *See id.*

The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial.'" *Celotex Corp.*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

Although a district court may not grant Summary Judgment by default simply because there is no opposition to the motion, the court may accept as undisputed the movant's version of the facts. *See Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The court may grant a Motion for Summary Judgment when the movant has made a prima facie showing of its entitlement to Summary Judgment. *See Hibernia,* 776 F.2d at 1279.

### III.  LAW AND ANALYSIS

#### A.  Employment Discrimination

The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). One may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). In order to establish a claim of discrimination and survive a motion for summary judgement, a complainant must survive the analysis outlined in *McDonnell Douglas*.

Under the *McDonnell Douglass* framework, the complainant must first establish a prima facie case of prohibited discrimination. Once she has done so, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision. Should the employer succeed in presenting such reasons, the burden then shifts back to the complainant, who then has an opportunity to discredit the employer's explanation. *Dorchy v Washington Metropolitan Area Transit Authority,* 45 F.Supp.2d 5, 10 (D.D.C. 1999).

To make out a prima facie case that her termination was unlawful under the ADA, the complainant must establish that (1) she was disabled within the meaning of the ADA, (2) with or without reasonable accommodation, she was able to perform the essential functions of her job, and (3) her employer terminated her employment in whole or in part because of her disability. *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998). Summary judgment for the employer on any one of these three elements defeats the complainants discriminatory discharge claim in its entirety. *See, e.g., Feliciano v. Rhode Island,* 160 F.3d 780, 788 (1st Cir.1998).

Here, there is no dispute between the parties as to whether or not Martin was "disabled" within the meaning of the ADA nor is there any dispute as to whether or not she could perform the essential functions of her job without accommodations. The dispute between the parties revolves around whether Martin was terminated because of her disability.

As an essential element to proving discriminatory discharge based upon a disability, the plaintiff must prove that his or her employer had knowledge of the disability at the time of the adverse employment action. *Zillyette v Capital One Financial Corp.*, 1 F.Supp.2d 1435, (M.D. Fla. 1999) (citing *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996)). The Eleventh Circuit explained: [An] employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability... At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee "because of" a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee "because of" some other reason. *Morisky,* 80 F.3d at 448 (quoting *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995)).

In *Zillyette,* the complainant learned during his employment with the defendant that he was

infected with the human immunodeficiency virus (HIV). He was subsequently discharged due to excessive tardiness. There, the court held that the employer did not know that the employee was infected with HIV when it terminated him, and was consequently not liable for discriminatory discharge under the ADA, even though the employee had been out sick seven times during a six month period of employment and the employer received a note from the employee's physician, one day before termination, stating that he was suffering from an "immunologic disease." *See Zillyete,* 1 F.Supp 2d at 1443.

Here, as Copeland's points out, Martin admits and the record reflects that she did not inform anyone at Copeland's, prior to her discharge, that she had AIDS. In her statement given to the EEOC only five months after her discharge, she explicitly stated that "I did not report my disability to anyone at Copeland's." Martin did state though, that she believed her "landlord called Copeland's and told someone." However, Copeland's denies this claim and Martin has not provided sufficient evidence to show otherwise.

Martin, three years after giving her statement to the EEOC, stated in her deposition that she informed her manager, Ron, of her condition. However, Copeland's denies this claim and Martin has provided no evidence to support this claim. Thus, the Court finds that there is no evidence to show that Copeland's knew that Martin had AIDS and Martin has failed to establish a prima facie case of discrimination under the ADA. Accordingly, the Court grants the Motion for Summary Judgment as to this issue.

B.   **Improper Medical History Form**

Martin claims that Copeland's illegally solicited detailed medical information. During the course of the EEOC's investigation, Copeland's was informed that it was using an improper

medical history form in connection with its employment applications. Martin, in completing her employment application with Copeland's did not indicate any medical condition. Thus, Copeland's, in its Motion for Summary Judgment, seeks to dismiss Martin's claim of improper medical history form. Copeland's contends that because Martin has not established that she sustained any damages as a result of having to fill out a medical questionnaire, her claim should be dismissed. Martin has not filed any opposition to this claim.

The general prohibition against discrimination on the basis of disability, contained in section 12112(a), "shall include medical inquiries and examinations." 42 U.S.C. § 12112(d). Under this provision, until a conditional offer of employment has been extended to an applicant, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. 12112(d)(2)(A).

There fails to be any indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability. *Armstrong v Turner Industries, Inc.*, 141 F.3d 554, 561 (5th Cir. 1998). Consequently, damages liability under § 12112(d)(2)(A) must be based on something more than a mere violation of that provision. *Id.; Street v Diamond Offshore Drilling*, 2001 WL 568111, *3 (E.D.La. 2001). There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation. *Id.*

In *Armstrong*, the Fifth Circuit concluded that the applicant needed to show "some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise

from a single violation." *Id.* at 562. Because the non-disabled applicant in that case could not show a cognizable injury caused by being asked the impermissible questions, the court concluded that he had failed to show entitlement to damages and affirmed the dismissal of his suit. *See id.* at 562, 564. However, the court held open the "possibility of liability based on any injuries legally and proximately caused by such a violation." *Id.* at 562 n. 20. Nonetheless, Martin has failed to sufficiently allege that she was terminated because of her responses to impermissible questions. Thus, Martin has failed to establish that she suffered an injury in fact or suffered any corresponding damages and her suit cannot go forward. Accordingly, Copeland's Motion for Summary Judgment should be granted.

## IV    RECOMMENDATION

It is therefore **RECOMMENDED** that the defendant's **Motion for Summary Judgment (doc. #47)** be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____ day of _____, 2002.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE